**\*\*\* NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER \*\*\***

**Electronically Filed
Supreme Court
SCAP-18-0000732
09-JUN-2020
11:40 AM**

SCAP-18-0000732

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

_____

In the Matter of

UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Complainant-Appellee-Appellant,

vs.

CHRISTINA M. KISHIMOTO,[1] Superintendent, Department of Education,
State of Hawai'i; and CONNECTIONS, A New Century Public Charter
School, Appellants-Appellees,

and

HAWAI'I LABOR RELATIONS BOARD; SESNITA A.D. MOEPONO and J.N.
MUSTO (2003-027), Agency-Appellees-Appellees.

_____

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CAAP-18-0000732; CIV. NO. 07-1-0314)

MEMORANDUM OPINION
(By: McKenna, Pollack, and Wilson, JJ., with Nakayama, J.,
dissenting, with whom Recktenwald, C.J., joins)

**I. Introduction**

This is a secondary appeal brought by the United Public

Workers, AFSCME, Local 646, AFL-CIO (hereinafter, "UPW") from

_____

[1]     Christina Kishimoto has succeeded Patricia Hamamoto ("Hamamoto") as Superintendent of the Department of Education, State of Hawai'i and, thus, has been automatically substituted for Hamamoto in this case pursuant to Hawai'i Rules of Appellate Procedure Rule 43(c) (2010).

rulings of the Circuit Court of the Third Circuit ("circuit court") in appeals from decisions of the Hawai'i Labor Relations Board ("HLRB").  UPW first appeals the circuit court's[2] December 3, 2008 interlocutory decision and order vacating the June 8, 2007 HLRB order granting UPW's motion for summary judgment.

The HLRB's June 8, 2007 order had concluded James Ah Sing ("Ah Sing"), who had been a custodian at Connections Public Charter School ("Connections") from 2000 to 2003, was covered by the terms of a March 15, 2004 stipulation signed by parties that included UPW and the Department of Education of the State of Hawai'i ("DOE") in another HLRB case concerning civil service employees at public charter schools.  The HLRB had ordered Ah Sing be reinstated to his position.

The circuit court's December 3, 2008 order vacated the HLRB's June 8, 2007 interlocutory summary judgment order on the bases that there were genuine issues of material fact as to (1) whether Ah Sing was a member of bargaining Unit 1 at the time of his termination; and (2) whether Ah Sing was intended to be in the class of workers covered by the stipulation in the other HLRB matter.

On remand, the HLRB ruled in favor of the DOE, and on appeal, the circuit court affirmed.  UPW therefore also appeals

---

[2]     The Honorable Glenn S. Hara presided.

the circuit court's affirmance of the HLRB's rulings on remand.

UPW raises four points of error on appeal.  UPW's first point of error maintains that, in the first appeal, the circuit court erred in failing to recognize the violation of merit principles and the public policy favoring civil service when it vacated the HLRB's interlocutory ruling that Ah Sing was a civil service member of UPW bargaining Unit 1, who was included in the stipulation in the other HLRB matter.

We agree with UPW on its first point of error on appeal that the circuit court erred in vacating the HLRB's June 8, 2007 interlocutory summary judgment order.  We therefore need not and do not address UPW's remaining issues on appeal, and we remand this matter to the HLRB for further proceedings consistent with this memorandum opinion.[3]

## II.  Background

### A.   Ah Sing's employment at Connections

Ah Sing was initially appointed on September 5, 2000, to a nineteen-hours-per-week part-time custodial position at Connections at its Mountain View campus.  All Connections

---

[3]     In summary, UPW's second through fourth points of error arising out of the second appeal to the circuit court allege the circuit court erred in: failing to address UPW's argument that if Ah Sing was in fact not a civil service employee, Connections and the DOE were required to bargain with UPW prior to contracting out his position; affirming HLRB's application of the exhaustion doctrine to Ah Sing's claim; and affirming the denial of UPW's motion to amend its complaint to include a violation of the stipulation between UPW and the DOE.

employees were appointed by the local school board on a year-to-year basis with a not to exceed ("NTE") date of June 30th of each school year.  Ah Sing's initial appointment was classified "exempt," with a NTE date of June 30, 2001.

Effective February 8, 2001, after Connections moved from the Mountain View campus to downtown Hilo, Ah Sing's employment was increased to full-time (40 hours per week).  At that time, Ah Sing became a member of UPW bargaining Unit 1.  An employee personnel action report dated July 23, 2001, stated that, as of that date, Ah Sing was in a temporary, exempt, at-will position ("Position No. 111418"), and that the employment could "be terminated at any time within 24 hours notice."

On January 2, 2001, however, the then-DOE Personnel Director had memorialized a directive that, beginning with the 2001-02 school year, all charter schools' employees would be in "temporary civil service positions" that would be filled applying normal civil service rules.  On July 23, 2001, Ah Sing therefore submitted an application for a "Custodian II" civil service position, and on the next day, Connections recommended Ah Sing to a limited term appointment ("LTA") as a temporary "School Custodian II," with a NTE date of June 30, 2002.[4]  Ah

---

[4]    This is consistent with the January 2, 2001 DOE memorialized directive that, beginning with the 2001-02 school year, all public charter school positions would be "temporary civil service positions" and filled in accordance with normal civil service procedures.

Sing completed the civil service application paperwork, and on August 1, 2001, Ah Sing submitted a separation notice for his custodian Position No. 111418 to accept DOE civil service Position No. 56376. Ah Sing was informed that his job had changed to a civil service position, and an August 22, 2001 employee personnel action report indicates: (1) Ah Sing was rehired as a School Custodian II in Position No. 56376 effective August 2, 2001; (2) his appointment was for a limited term, with a NTE date of June 30, 2002; and (3) he was a member of bargaining Unit 1.

An employee personnel action report for Ah Sing dated October 17, 2002, for the 2002-03 school year reflected that Ah Sing was appointed to the School Custodian II Position No. 56376 with a NTE date of June 30, 2003, and that effective July 2, 2002, his position was "[c]onver[ted]" to a civil service member from a probationary appointment. This report also states that "[t]he personnel actions shown above have been taken in compliance with the provisions of Chapter[] 76 [], HRS, as amended." Hawai'i Revised Statutes ("HRS") Chapter 76 is the "Civil Service Law."

As noted, from the 2001-02 school year, the DOE had officially been treating public charter school employees as civil service employees. On June 9, 2003, however, the then-Director of the State of Hawai'i Department of Human Resources

Development ("DHRD") wrote to the then-Superintendent of the DOE stating the DHRD's position was that employees of public charter schools did not have civil service status and that the DHRD had been unaware until a few days before that its lists of eligible employees were being used to fill public charter school positions.

In the meantime, a May 6, 2003 Connections letter addressed to Ah Sing indicated the school board had taken action the day before "to decline to renew your 89 day contract as of June 30, 2003."  No reason was stated in the letter.  A DOE "Separation Notice" for "Classified Personnel" was signed by Ah Sing on June 27, 2003, and it indicated a separation date effective June 30, 2003, from the School Custodian II Position No. 56376.  The notice was signed by a Connections representative on June 30, 2003, and by the DOE Assistant or Complex Area Superintendent on July 8, 2003.

A July 17, 2003 letter from the Connections "CEO" to Ah Sing stated the school board had decided to eliminate Ah Sing's position "given the limited funds we will be receiving for the coming school year."  After Ah Sing's position was eliminated, custodial work was performed at Connections by non-bargaining unit employees, an independent contractor paid for by the school's landlord, and non-profit entities.

**B.    UPW's HLRB complaints**

**1.    UPW's complaint on behalf of Ah Sing**

On August 18, 2003, UPW filed a prohibited practices complaint with the HLRB, challenging the non-renewal of Ah Sing's custodian position at Connections.[5]  In the complaint, UPW alleged that DOE and Connections (collectively, "Employer") violated the collective bargaining agreement ("CBA") with UPW, and HRS Chapter 89, by terminating Ah Sing.  Specifically, the complaint alleged the non-renewal of Ah Sing's position (1) willfully violated various terms of the bargaining Unit 1 CBA in violation of HRS § 89-13(a)(8) (1993); and (2) constituted a willful refusal and failure to comply with the duty to bargain in good faith over mid-term changes in wages, hours of work, other terms and conditions of employment under HRS §§ 89-3 (Supp. 2000) and 89-9(a) (Supp. 2000),[6] and the duty to recognize

---

[5]    HLRB Case No. CE-01-539.

[6]    HRS § 89-3 provides in relevant part:

> **Rights of employees.**  [Section effective June 1, 2002.  For present provision, see main volume.]  Employees shall have the right of self-organization and the right to form, join, or assist any employee organization for the purpose of bargaining collectively through representatives of their own choosing on questions of wages, hours, and other terms and conditions of employment, and to engage in lawful, concerted activities for the purpose of collective bargaining of other mutual aid or protection, free from interference, restraint, or coercion.

(Bracketed material in original.)

HRS § 89-9 provides in relevant part:

(continued. . .)

UPW as the exclusive bargaining agent under § 89-8(a) (1993).[7]
UPW's complaint also alleged Employer's "willful refusal and
failure to comply with the provisions of [HRS] chapter 89"
constituted prohibited practices under HRS §§ 89-13(a)(1), (5),
and (7).[8] Ah Sing's September 23, 2003 amended complaint added a

---

(continued. . .)

> **Scope of negotiations; consultation.** [Section effective
> July 1, 2002. For section effective June 30, 2002, see
> aboe.] (a) The employer and the exclusive representative
> shall meet at reasonable times[] . . . and shall negotiate
> in good faith with respect to wages, hours . . . and other
> terms and conditions of employment which are subject to
> collective bargaining and which are to be embodied in a
> written agreement as specified in section 89-10, but such
> obligation does not compel either party to agree to a
> proposal or make a concession[.]

(Bracketed material in original.)

[7] HRS § 89-8 provides in relevant part:

> **Recognition and representation; employee participation.**
> (a) The employee organization which has been certified by
> the board as representing the majority of employees in an
> appropriate bargaining unit shall be the exclusive
> representatives of all employees in the unit. As exclusive
> representative, it shall have the right to act for and
> negotiate agreements covering all employees in the unit and
> shall be responsible for representing the interests of all
> such employees[.]

[8] HRS § 89-13 provides in relevant part:

> **Prohibited practices; evidence of bad faith.** (a) It shall
> be a prohibited practice for a public employer or its
> designated representative wilfully to:
>
> (1) Interfere, restrain, or coerce any employee in
> the exercise of any right guaranteed in this
> chapter;
>
> . . . .
>
> (5) Refuse to bargain collectively in good faith
> with the exclusive representative as required
> in section 89-9;

(continued. . .)

claim alleging violation of layoff rights under section 12 of the CBA.

### 2. The UPW complaint against the DOE and the UPW/DOE stipulation

At the time Ah Sing's HLRB complaint was filed, the status and rights of employees at public charter schools were the subject of various additional UPW filings before the HLRB.[9] Before filing Ah Sing's complaint, on July 3, 2003, UPW and the Hawai'i Government Employees Association ("HGEA") filed a prohibited practice complaint with the HLRB on behalf of all employees in bargaining Units 1, 2, 3, 4, and 6, against the then-Director of the DHRD and then-Governor of the State of Hawai'i, regarding the civil service status of public employees at charter schools ("UPW complaint"). The UPW complaint, which was later amended to add the DOE and the Board of Education ("BOE"), alleged that the DHRD's position that charter school employees were not civil service employees and the DOE's subsequent implementation of the DHRD directive violated the collective bargaining rights of affected charter school

---

(continued. . .)

. . . .

    (7)   Refuse or fail to comply with any provision of this chapter; [or]
    (8)   Violate the terms of a collective bargaining agreement[.]

[9]   HLRB Case Nos. CE-01-537a, CE-02-537b, CE-03-537c, and CE-04-537d.

employees.

On July 3, 2003, UPW had obtained from the DOE's Hawai'i Regional Office's Personnel Regional Officer in Hilo a list of Big Island public charter school employees who might be impacted by the DHRD's June 9, 2003 directive that public charter school employees were not civil service employees.  The list provided to UPW by the DOE included Ah Sing.

On March 15, 2004, UPW, the HGEA, the DOE, and the BOE entered into a stipulation and order in the UPW complaint ("UPW/DOE stipulation").  The UPW/DOE stipulation provided in relevant part as follows:

> 1. The UPW is an employee organization and the exclusive representative, as provided under HRS § 89-2, of employees in bargain unit 01, non-supervisory employees in blue collar positions.
>
> . . . .
>
> 4. The UPW [] and the State of Hawaii are at all times relevant herein part[y] to the collective bargaining agreement[] covering employees in bargaining unit 01 . . . .
>
> 5. Classified employees of the [DOE] covered by these collective bargaining agreements have historically and customarily been part of the "merit" or "civil service" system of the State of Hawaii.  There are approximately 150 classified positions of DOE which are in public charter schools and covered by such civil service system.
>
> 6. The collective bargaining agreements contain provisions for the maintenance of prior rights of employees pursuant to civil service statutes and rules, and require negotiations before changes in conditions of work may be implemented.
>
> 7. On or about June 9, 2003 the Department of Human Resources Development (DHRD) informed Employer of its position (and policy) that employees of public charter schools in the DOE "do not have civil service

10

status" and are no longer part of the merit system.

8. On or about June 12, 2003 DHRD requested Employer to "convert all public charter school positions to reflect the fact that these positions do not have civil service status" by June 30, 2003, and thereafter informed Employer that DHRD would not provide "certified lists of eligible applicants" and "civil service appointments may not be made to fill public charter school positions."

9. On and after July 8, 2003 the aforementioned DHRD position, policy, and actions were communicated to public charter school administrators and employees.

10. As a direct consequence various public charter school employees (in order to preserve and maintain their civil service status, rights and benefits), initiated transfers and other changes in their terms and conditions of work.

11. As a further consequence on or about July 1, 2003 and thereafter, DOE failed to process for hiring approximately fifteen (15) or more public charter school employees in classified positions through the statewide merit system for compliance with civil service requirements, and as a result these employees are currently exempt from civil service coverage.

. . . .

14. Employer hereby stipulates and agrees to cease and desist from implementing the aforementioned DHRD position or policy regarding loss of civil service status for public charter school positions and employees, and to make whole all adversely [affected] employees (including but not limited to the restoration or return of said employees to their former public charter school positions without loss of rights, privileges, and benefits).

15. Within 30 days from the date of this Stipulation and Order Employer shall process all currently exempt public charter school employees in classified positions through the statewide merit system and restore them to civil service status. All classified positions in public charter schools shall be restored to the merit system within thirty days.

### 3. HLRB order granting UPW's motion for summary judgment in Ah Sing's case

On March 16, 2004, UPW filed a motion for summary judgment in Ah Sing's case before the HLRB, contending it was

11

entitled to judgment as a matter of law based on the UPW/DOE stipulation because Ah Sing fell within the affected class of the UPW/DOE stipulation.  In support of its motion, UPW attached: (1) a copy of the UPW/DOE stipulation; (2) Ah Sing's declaration stating he was notified on June 27, 2003, that his civil service position was not being renewed; (3) a copy of Ah Sing's separation notice from the DOE; and (4) the July 17, 2003 letter from Connections to Ah Sing stating Ah Sing's position was being eliminated due to limited funding.

In their memorandum in opposition, Employer argued that UPW failed to meet its burden of demonstrating that Ah Sing was adversely affected by the DHRD's position that public charter school employees were not entitled to civil service status and were thus covered by the UPW/DOE stipulation.  Employer contended UPW could not meet this burden because the school board decided on May 5, 2003, to not renew Ah Sing's temporary appointment, which was before the DHRD announced its policy.  In support of its memorandum, Employer attached a declaration from a DOE personnel specialist stating that "it is [her] understanding that the decision not to renew Mr. Ah Sing's temporary appointment was based upon cost or funding concerns - not civil service status[] . . . [and] that the decision . . . was made on or about May 5, 2003."

The HLRB held a hearing on UPW's motion on March 29, 2004,

where the parties presented their arguments.  On June 8, 2007, the HLRB entered an order granting UPW's motion for summary judgment.  In its order, the HLRB stated Ah Sing's employment status and treatment by the DOE and Connections were "hopelessly muddled[]" and that "[t]he record reflects at least six alternative representations[,]" but that it was unnecessary to sort through the "minutia of [Ah Sing's] particular circumstance" because "Ah Sing was in all probability the victim of the confusion surrounding the employment rights and status of public charter school workers[.]"  The HLRB concluded Ah Sing fell within the terms of the UPW/DOE stipulation and ordered his reinstatement.

C.    **First appeal to the circuit court**

1.    **Parties' briefs**

Employer filed a notice of appeal to the circuit court on July 27, 2007.  In its opening brief, Employer claimed the HLRB's grant of summary judgment was improper because there were genuine issues of material fact.  Employer argued the HLRB's order itself acknowledged factual disputes.  Employer also asserted Connections could not be found to have willfully engaged in a prohibited practice based on the entry of the UPW/DOE stipulation because Connections was not a party to the stipulation.  Employer also claimed the HLRB exceeded its authority and jurisdiction by ordering Ah Sing's reinstatement

13

to a position that no longer existed.

The HLRB's answering brief noted that, after hearing arguments, it had concluded there were no issues of material fact and that UPW was entitled to judgment as a matter of law. Based on the circumstances surrounding Ah Sing's termination, the HLRB maintained that "Ah Sing should have been reinstated to his position or a similar position as were other classified charter school employees by the [UPW/DOE stipulation]" and viewed Employer's failure to do so as both violating the UPW/DOE stipulation and breaching the CBA. With respect to Respondent's argument that the HLRB had exceeded its jurisdiction by ordering Ah Sing's reinstatement, the HLRB noted its broad authority to fashion remedies for unfair or prohibited practices. The HLRB cited this court's opinion in Del Monte Fresh Produce (Hawaii), Inc. v. International Longshore and Warehouse Union, Local 142, AFL-CIO, 112 Hawai'i 489, 508-10, 146 P.3d 1066, 1085-87 (2006), which held that the HLRB had not abused its discretion in fashioning a substantive remedy for laid-off employees. In Del Monte, this court noted that because the "legislature empowered the HLRB with discretion in ordering affirmative remedies" and because discretion is a flexible concept, only an arbitrary or capricious decision by the HLRB would be an abuse of discretion. 112 Hawai'i at 508-09, 146 P.3d at 1085-86. The HLRB requested that, absent a showing it had abused its discretion, the circuit

14

court affirm its remedial order.

> ### 2. Circuit court order vacating the HLRB's order granting UPW's motion for summary judgment

After oral arguments, on December 3, 2008, the circuit court entered its decision and order vacating the HLRB's order granting UPW's motion for summary judgment in Civil No. 07-1-314. The circuit court found the HLRB erroneously granted UPW's motion for summary judgment because there were genuine issues of material fact as to: (1) whether Ah Sing was a member of bargaining Unit 1 at the time of his termination; and (2) whether Ah Sing was intended to be in the class of workers covered by the UPW/DOE stipulation. The circuit court thus vacated the HLRB's order granting UPW's motion for summary judgment.

## D. HLRB proceedings on remand

On remand, in summary, in its July 9, 2014 Order No. 3005, the HLRB denied Employer's motion to dismiss for lack of subject matter jurisdiction, denied Employer's alternative motion for summary judgment because the circuit court had overturned the HLRB's grant of summary judgment in favor of UPW based on alleged genuine issues of material fact, and denied UPW's motion to amend the Ah Sing complaint to add a claim for breach of the

15

UPW/DOE stipulation.[10] The HLRB reasoned that, if Ah Sing was covered by the UPW/DOE stipulation, there was already an amended UPW/HGEA complaint against the DOE in Case No. CE-01-537a alleging a violation of the UPW/DOE stipulation and that, therefore, amending the Ah Sing complaint to add a claim against the DOE would result in two complaints for the same controversy, in violation of Hawai'i Administrative Rules ("HAR") § 12-42-42(f) (1981).[11]

The HLRB then conducted a hearing on the prohibited practices complaint on October 22, and 23, 2014, December 11, 2014, and May 21, 2015. On August 16, 2017, the HLRB entered Decision No. 491 with its findings of fact, conclusions of law, and an order dismissing Ah Sing's complaint. The HLRB made numerous findings of facts and concluded: (1) Ah Sing was a bargaining Unit 1 member at the time that he was terminated and was required to exhaust his contractual remedies before filing the complaint;[12] (2) Ah Sing was not covered by the UPW/DOE

---

[10] The HLRB also denied UPW's motion to amend to add claims for: (1) breach of the ninety-day layoff notice provision in the CBA; (2) breach of the HLRB's oral ruling in Ah Sing's case; and (3) attorney's fees and costs; these denials were not appealed.

[11] HAR § 12-42-42(f) states: "Only one complaint shall issue against a party with respect to a single controversy."

[12] The HLRB noted in Decision No. 491 that it had declined to dismiss the complaint based on Ah Sing's alleged failure to exhaust remedies twice before:

> Notwithstanding these two prior rulings, following
> the hearing on the merits on remand, the Board exercises
>                                          (continued. . .)

stipulation because (a) he was not employed by the DOE in March 2004 when the stipulation became effective; (b) Ah Sing's limited term position was eliminated due to lack of funding and not the DHRD's directive; and (c) the law of the case did not constrain the HLRB's conclusion because its initial decision was vacated by the circuit court; (3) UPW failed to carry its burden of showing that the DOE contravened the duty to bargain in good faith in violation of HRS §§ 89-13(a)(1), (5), and (7); and (4) Connections willfully retaliated against Ah Sing by cancelling his rubbish hauling contract in violation of HRS § 89-13(a)(4), but that UPW failed to show that the retaliatory conduct violated HRS § 89-13(a)(1) by interfering with Ah Sing's right to bargain collectively.[13]

---

(continued. . .)
   its discretion to reconsider this issue based on Hawaii federal precedent. . . .

   The Board concludes that the evidence on remand was "substantially different" on this issue because unlike the record at the time of the first and second motions to dismiss, the record on remand is undisputed that Ah Sing was a Unit 1 member. For this reason, the Board, in its discretion, reconsiders the exhaustion issue and agrees with [Employer] based on the record that because Ah Sing was a Unit 1 member at the time of his termination, he was required to file a grievance and exhaust[] his contractual remedies[.]"

[13]   HRS § 89-13 states in relevant part:

   (a) It shall be a prohibited practice for a public employer or its designated representative wilfully to:

      (1)   Interfere, restrain, or coerce any employee in the exercise of any right guaranteed in this chapter[.]

                                        (continued. . .)

**E.    Second appeal to the circuit court**

UPW appealed the HLRB's decisions on remand to the circuit court.[14]  On August 28, 2018, the circuit court entered a written decision and order[15] affirming the HLRB's rulings on remand entered its judgment on September 19, 2018.

**F.    Appeal to the ICA and transfer to this court**

On September 26, 2018, UPW appealed the circuit court's decision to the ICA.  This court granted UPW's application for transfer of the appeal on July 2, 2019.

### III.    Standards of review

**A.    Secondary appeals**

> Review of a decision made by the circuit court upon its review of an agency's decision is a secondary appeal. The standard of review is one in which [the appellate] court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) [(1993)] to the agency's decision.
>
> HRS § 91-14, entitled "Judicial review of contested cases," provides in relevant part:
>
> (g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> >    (1)    In violation of constitutional or statutory provisions; or
> >    (2)    In excess of the statutory authority or jurisdiction of the agency; or
> >    (3)    Made upon unlawful procedure; or

---

(continued. . .)

[14]    Employer initially filed a cross-appeal, which it later withdrew.

[15]    The Honorable Henry T. Nakamoto presided.

18

> > (4) Affected by other error of law; or
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
>
> [U]nder HRS § 91-14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects under subsection (3); findings of fact under subsection (5); and an agency's exercise of discretion under subsection (6).

United Pub. Workers, AFSCME, Local 646, AFL-CIO v. Hanneman, 106 Hawai'i 359, 363, 105 P.3d 236, 240 (2005) (second and third alterations in original). "Pursuant to HRS § 91-14(g), an agency's conclusions of law are reviewed de novo." 106 Hawai'i at 363, 105 P.3d at 240. "A circuit court's conclusions of law are subject to de novo review." Paul's Elec. Serv., Inc. v. Befitel, 104 Hawai'i 412, 420, 91 P.3d 494, 502 (2004).

**B. Summary judgment**

An appellate court reviews a grant of summary judgment de novo:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Uyeda v. Schermer, 144 Hawai'i 163, 170, 439 P.3d 115, 122 (2019).

**IV.  Discussion**

In its opening brief, UPW raises the following points of error:

1.  The circuit court erroneously failed to recognize the clear violation of the merit principles and public policy favoring civil service when it vacated the [HLRB's] prior grant of summary judgment and then affirmed the [HLRB's] later conclusion that the [UPW/DOE stipulation] and order did not extend to Ah Sing and his civil service position at Connections.

2.  The circuit court erroneously failed to recognize [Employer's] duty to negotiate over the elimination of Connections' only unit 1 employee and their duty to bargain over the decision of privatizing the work if Ah Sing was in fact not a civil service employee.

3.  The circuit court erred in affirming the [HLRB's] abrogation of its exclusive original jurisdiction as delegated by the legislature when HLRB misapplied the exhaustion doctrine to refuse to decide [UPW's] claims for violations of the [CBA] under [HRS § 89-13(a)(8)].

4.  The circuit court erroneously determined that the [HLRB] did not err in denying [UPW's] motion to amend the original complaint to include the violation of the [UPW/DOE stipulation].

As noted earlier, we agree with UPW's first point of error on appeal.  For the reasons explained below, the circuit court erred in vacating the HLRB's June 8, 2007 order granting summary judgment in favor of UPW on the grounds that there were genuine issues of material fact as to: (1) whether Ah Sing was a member of bargaining Unit 1 at the time of his termination; and (2) whether Ah Sing was intended to be in the class of workers covered by the UPW/DOE stipulation.  Based upon our de novo review, the circuit court erred because there were no such genuine issues of <u>material</u> fact.  We therefore need not and do

20

not address UPW's remaining issues on appeal, and we remand this matter to the HLRB for further proceedings consistent with this memorandum opinion.

First, there is no genuine issue of material fact regarding whether Ah Sing was a member of bargaining Unit 1 at the time of his termination. When Ah Sing accepted DOE civil service Position No. 56376 in August 2001, the August 22, 2001 employee personnel action report clearly indicated he was a member of bargaining Unit 1. His employee personnel action report of October 17, 2002, for the school year ending June 30, 2003, also clearly indicated he was a member of bargaining Unit 1. Thus, the circuit court erred by ruling in its December 3, 2008 decision and order that the HLRB erred in granting UPW's motion for summary judgment on the grounds that there was a genuine issue of material fact as to whether Ah Sing was a member of bargaining Unit 1 at the time of his termination on June 30, 2003.

The circuit court also based its vacatur of the HLRB's June 8, 2007 summary judgment order, however, based on its conclusion that there was also a genuine issue of material fact as to whether Ah Sing was intended to be covered by the UPW/DOE stipulation. The HLRB's June 8, 2007 decision did state that "[t]he record reflects at least six alternative representations of [Ah Sing's] employment status and consequent reasons for

termination[,]" and that "Ah Sing was in all probability the victim of the confusion surrounding the employment rights and status of public charter school workers[.]"  These observations, however, do not raise genuine issues of material fact as to whether or not Ah Sing was covered by the UPW/DOE stipulation.

Ah Sing's employee personnel action report of October 17, 2002, for the school year ending June 30, 2003, indicates he was hired effective July 2, 2002, in DOE civil service Position No. 56376 for a one-year period with a NTE date of June 30, 2003, and that he was a member of bargaining Unit 1.  Also, the DOE itself included Ah Sing in the July 3, 2003 list of Big Island public charter school employees impacted by the DHRD's June 9, 2003 directive that public charter school employees were not civil service employees.

The plain language of the UPW/DOE stipulation states it applied to "approximately 150 classified positions of DOE [] in public charter schools [] covered by [the] civil service system" (paragraph 5), which included bargaining Unit 1 employees (paragraphs 1 and 4), for whom DOE was informed that "[o]n or about June 9, 2003 . . . that employees of public charter schools in the DOE 'do not have civil service status'" (paragraph 7).

In paragraph 14 of the stipulation, Employer agreed to "cease and desist from implementing the aforementioned DHRD

position or policy regarding loss of civil service status for public charter school positions and employees[.]" The "aforementioned" DHRD position or policy included the DHRD's statement that "[o]n or about June 9, 2003 . . . that employees of public charter schools in the DOE 'do not have civil service status'" (paragraph 7), which included Ah Sing, who was still a civil service public charter school employee as of that date. Then, as stated in paragraph 6 of the UPW/DOE stipulation, "[t]he collective bargaining agreements contain provisions for the maintenance of prior rights of employees pursuant to civil service statutes and rules, and require negotiations before changes in conditions of work may be implemented." Ah Sing had such civil service rights as a bargaining Unit 1 civil service employee.

Employer argues that despite including Ah Sing's name in the list of employees affected by the DHRD's June 9, 2003 directive in its July 3, 2003 letter to UPW, Ah Sing was not included in the stipulation because he had been notified in May 6, 2003, that Connections would not be renewing his contract due to budget limitations. This, however, is not <u>a genuine issue of material fact</u> as to whether Ah Sing was covered by the UPW/DOE

stipulation.[16] The stipulation included civil service bargaining Unit 1 public charter school employees as of June 9, 2003, when the DHRD stated he did not enjoy civil service rights. Ah Sing was denied rights as a civil service employee, which existed whether or not Connections had reduced funding. Therefore, he is included in the UPW/DOE stipulation, and the circuit court also erred in vacating the HLRB's June 8, 2007 summary judgment order based on its conclusion that there was a genuine issue of material fact as to whether Ah Sing was intended to be covered by the UPW/DOE stipulation.

Accordingly, we need not address UPW's additional points of error arising out of the HLRB's decisions after remand.

## V. Conclusion

Based on the reasons explained above, we remand this matter to the HLRB for further proceedings consistent with this memorandum opinion. If the remedy ordered by the HLRB in its June 8, 2007 order is no longer available or appropriate, as stated in Del Monte, the "legislature empowered the HLRB with

---

[16] Accordingly, we disagree with the dissent. Also, Connections' purported May 6, 2003 non-renewal of Ah Sing and the DOE employee's attestation that Ah Sing's non-renewal was not related to DHRD's position regarding civil service status of the various employees does not create a genuine issue of material fact because Ah Sing was still a civil service employee as of June 9, 2003; the DOE itself included Ah Sing in the July 3, 2003 list of Big Island public charter school employees impacted by the DHRD's June 9, 2003 directive that public charter school employees were not civil service employees.

discretion in ordering affirmative remedies[.]" 112 Hawai'i at 508, 146 P.3d at 1085.

DATED: Honolulu, Hawai'i, June 9, 2020.

Rebecca L. Covert,
(Herbert R. Takahashi
with her on the briefs)
for claimant

James E. Halvorson and
Richard H. Thomason,
for appellants-appellees

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

